**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| NUMEN, LLC | ) |
| | ) |
|       **Plaintiff,** | )     **Case No. 22-2351** |
| **v.** | ) |
| | ) |
| **KC FLOAT SPA, LLC, and** | ) |
| **BLAKE SWETNAM** | ) |
| | ) |
|       **Defendants.** | ) |
| _____ | ) |

**COMPLAINT**

Comes now Plaintiff Numen, LLC, and for its Complaint against KC Float Spa, LLC and Blake Swetnam, states as follows:

**ALLEGATIONS COMMON TO ALL COUNTS**

1.      Plaintiff Numen is a Missouri limited liability company with its principal place of business located at 7235 Central Street, Kansas City, MO 64114.

2.      Defendant KC Float Spa, LLC is a Kansas limited liability company with its principal place of business at 11972 West 119th Street, Overland Park, Kansas, 66213.

3.      Defendant Blake Swetnam is a Missouri resident who, upon information and belief, can be served at 11712 Central Street, Kansas City, MO 64145.

4.      This Court has federal question and subject matter jurisdiction over this action for trademark infringement and unfair competition claims under Section 39(a) of the Lanham Trademark Act, 15 U.S.C. §§ 1051 et seq., and pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has jurisdiction over the remaining subject matter of this action, which include Kansas common law claims, under the doctrine of pendent jurisdiction.

6.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(b)(1) and (c).

7.     Defendant Blake Swetnam was a Member and owner of Floating KC, LLC, ("Floating KC") along with Rush Olney and Daniel Krejci.

8.     Floating KC was managed and operated by Blake Swetnam.

9.     Floating KC was the first business of its kind in Kansas City, offering zero-gravity, sensory-reduction floating experiences which allow customers the chance to relieve stress, recover from injuries, relax, and more.

10.    Floating KC's logo includes the phrase "KC's Premier Float Spa."



11.    Floating KC has consistently and extensively used the trade names "Floating KC" and "KC's Premier Float Spa" ("Marks") since approximately 2015.

12.    Floating KC has consistently used the Marks since 2015 in both its website and its print marketing.

13.    Numen has consistently and extensively continued to use the Marks in its operation of Floating KC since the purchase in October of 2021.

14.    As a result of Floating KC's and Numen's continuous use of the Marks for the identified services, significant consumer goodwill has been developed in the Marks, which have acquired distinctiveness with respect to the identified services and with respect to the source of the services.

15.    As such, Floating KC obtained and established "use" trademarks for "Floating KC" and for "KC's Premier Float Spa" since 2015.

16.     Floating KC approached Numen's owners, Dan and Maria Murphy, to propose the idea of selling Floating KC to Numen, and they eventually agreed.

17.     On the "Effective Date" of October 20, 2021, Messrs. Swetnam, Olney, and Krejci sold and transferred essentially all of the assets of Floating KC to Numen, LLC, pursuant to the Asset Purchase Agreement ("APA").

18.     A true and correct copy of the APA is attached hereto as **Exhibit "A."**

19.     Mr. Swetnam signed the APA twice, once as a Member on behalf of the "Seller" Floating KC, LLC and once individually, as an owner and member of Floating KC, LLC.

20.     In accordance with the APA, Mr. Swetnam explicitly promised not to "disclose, disseminate, divulge, discuss, copy or otherwise use or suffer to be used, in competition with, or harmful to the interests of, Buyer, any information (written or oral), documents, lists or other data of, or respecting any aspect of, the business or customers of Buyer."

21.     In the APA, "Confidential Business Information" includes "customer lists."

22.     In the APA, Mr. Swetnam and Floating KC sold, among other things, "exclusive rights to Client List" to Numen. Exhibit "A," page 2, section 2.01(g).

23.     The "Client List" is defined as: "All data in any form whether electronic or otherwise relating to all former clients, current clients and any and all prospect lists including the source of the data and prior contacts including full and exclusive access to all data stored in the 'Booker' software system used for managing business." Exhibit "A," page 2, section 2.01(h).

24.     In the APA, Mr. Swetnam and Floating KC sold the trade name "Floating KC." Exhibit "A," page 2, section 2.01(f).

25.     In the APA, Mr. Swetnam and Floating KC sold all other tradenames, besides "Floating KC," used by Floating KC. Exhibit "A," page 2, section 2.01(f).

26.     In the APA, Mr. Swetnam and Floating KC sold all intellectual property rights of Floating KC, including all websites and "exclusive rights to Client List." Exhibit "A," page 2, section 2.01(g).

27.     The sale of all tradenames and all intellectual property rights of Floating KC to Numen necessarily included the Marks identified above.

28.     In the APA, Mr. Swetnam and Floating KC sold all Goodwill of Floating KC. Exhibit "A," page 3, section 2.01(i).

29.     In accordance with the APA, Numen paid $60,000 for the assets listed above, and others. Exhibit "A," page 3, section 2.04.

30.     Floating KC and Swetnam agreed to indemnify Numen and to pay Numen's attorney fees for, among other things, any breach of the APA. Exhibit "A," page 7, section 9.04(a).

31.     Defendant Swetnam filed a new business called "KC Float Spa, LLC" with the Kansas Secretary of State on November 5, 2021.

32.     Just like Floating KC, Swetnam's business offers zero-gravity, sensory-reduction floating experiences.

33.     Defendant Swetnam's new business KC Float Spa directly competes with Floating KC.

34.     Mr. Swetnam, having previously owned, managed, and operated Floating KC for years, is intimately aware of the value of the Client List, the Goodwill of Floating KC, as well as Floating KC's consistent prior use of the Marks, all of which he sold to Numen.

35.     As such, Mr. Swetnam is intimately aware of Floating KC's use of the phrase "KC's Premier Float Spa."

- 4 -

36.     The name "KC Float Spa" is confusingly similar to "KC's Premier Float Spa" (emphasis added).

37.     The name "KC Float Spa" is also confusingly similar to "Floating KC."

38.     Defendants Swetnam and KC Float Spa are also directly soliciting clients from the Client List which they sold to Numen in October of 2021.

39.     Defendants have sent, or have had sent on their behalf, over nine thousand emails to clients from Floating KC's/Numen's Client List, directly soliciting and advertising for Mr. Swetnam's new business "KC Float Spa."

40.     Upon information and belief, these emails have been sent across state lines.

41.     In fact, Dan Murphy, one of the owners of Numen, who is now operating Floating KC, received an email from KC Float Spa, his new competitor, stating: "Hi Dan, Your account with KC Float Spa has been closed per your request. Your data will be deleted within 30 days. If you believe this was a mistake, please contact the business directly to create a new account."

42.     Mr. Murphy had obviously never created an "account" with his competitor KC Float Spa.

43.     Upon information and belief, this was the result of defendant KC Float Spa removing Mr. Murphy from the Client List before they sent the emails out to the nearly 10,000 clients which they had previously sold to Plaintiffs.

44.     Further, Silvia Burton, an employee of Floating KC, also received an email from KC Float Spa.

45.     Despite working for Floating KC and thus being familiar with the company and its adverting and trade names, Ms. Burton was confused and thought the email she received from Defendants was an email from her employer, Floating KC.

46.     Ms. Burton asked Maria Murphy, the other owner of Plaintiff and now operator of Floating KC, why Floating KC had raised their prices.

47.     The owners of Numen, LLC have been notified that clients from the Client List have received emails from KC Float Spa and these clients were confused about whether the emails had come from Floating KC.

48.     In one email from August 31, 2022, a client of Floating KC asks "are you associated with the one that opened in KS?"

49.     Defendants operate a website https://kcfloatspa.com/ .

50.     Defendant Swetnam is advertised on KC Float Spa's website as having 8 years of experience in this field.

51.     Defendant Swetnam and his new business KC Float Spa also employs two employees who were formerly employed by Floating KC, Jeremy Brooks and Ben Goehrung.

52.     Given the similarities between "KC Float Spa," being used and operated by defendants, and "Floating KC" and "KC's Premier Float Spa" being used and operated by Plaintiffs, there is a likelihood of confusion in the marketplace.

53.     The above examples represent evidence of actual confusion in the marketplace.

54.     Plaintiff hired counsel and sent a Cease & Desist letter to Defendants Swetnam and KC Float Spa dated July 6, 2022, attached hereto as **Exhibit "B."**

55.     Since that letter, defendants now also operate another website, https://ksfloatspa.com , and are now apparently using the phrase "KS Float Spa."

56.     Both websites - https://kcfloatspa.com/ and https://ksfloatspa.com are fully operational, and describe the same facilities at the same address, and use the same logo.

57.     Just like "KC Float Spa", "KS Float Spa" is confusingly similar to plaintiff's Marks "KC's Premier Float Spa" and "Floating KC."

58.     Further, upon information and belief, defendants misappropriated the advertising ideas of plaintiff by doing the following:

> a.  Using "KC Float Spa" and/or "KS Float Spa" which is substantially similar to "KC's Premier Float Spa" and "Floating KC" which has been used by Plaintiff for years;
>
> b.  Creating and distributing a tri-fold brochure which is substantially similar to the tri-fold brochures used and distributed by Plaintiff, and using photographs of a floating woman which is substantially similar to or exactly the same as the photographs of the same floating woman used in Plaintiff's tri-fold brochures.

59.     Mr. Swetnam has admitted that he used a client list from Floating KC to send an e-mail on behalf of KC Float Spa.

60.     Defendant Blake Swetnam personally participated in and/or directed the wrongful and tortious activities described herein such that he bears individual liability.

## COUNT I
### Unfair Competition
### 15 USC § 1125(a) (Lanham Act Section 43(a))

61.     Plaintiff, re-alleges and incorporates all prior paragraphs of this Complaint as though fully set forth herein at length and verbatim.

62.     Defendants have used in connection with its services false designations of origin, false or misleading descriptions of fact and false or misleading representations of fact, which: (A) are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Plaintiff with Defendants, or as to the origin, sponsorship or approval of

Plaintiff's services, or commercial activities by Defendants; and (B) in commercial advertising and promotion misrepresenting the nature, characteristics and qualities of Plaintiff's or Defendants' services.

63.     Defendants' acts of using such false designations of origin and false or misleading descriptions and representations of fact in commerce in connection with the sale of its services is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of the Plaintiff with Defendants violates Plaintiff's rights under 15 U.S.C. § 1125(a).

64.     As a direct and proximate result of Defendants' actions, Plaintiff has been injured and will suffer additional injury hereafter and has suffered damages and will suffer additional damages hereafter, together with prejudgment interest thereon.

65.     Plaintiff has suffered and will continue to suffer irreparable injury as the result of the conduct of Defendants.

## COUNT II
### Intentional Misrepresentation / Fraudulent Inducement

66.     Plaintiff adopts, re-alleges and incorporates all prior paragraphs of this Complaint as though fully set forth herein at length and verbatim.

67.     Defendant Swetnam made false statements as statements of existing and material fact, among others: Defendant represented he would not solicit clients from the Client List, and represented that he was going to sell exclusive rights to the goodwill and the intellectual property rights of Floating KC, including but not limited to the trade name "Floating KC."

68.     Swetnam knew these representations were false or made them recklessly without knowledge concerning them.

69.     The representations were intentionally made for the purpose of inducing Plaintiff to act upon them.

70.     The Plaintiff reasonably relied and acted upon the representations made by Defendant Swetnam.

71.     The plaintiff sustained damage by relying upon the representations.

## Count III
## Negligent Misrepresentation

72.     Plaintiff adopts, re-alleges and incorporates all prior paragraphs of this Complaint as though fully set forth herein at length and verbatim.

73.     In the course of its business relationship with Plaintiff, in which they had a pecuniary interest, Defendants supplied false information for the guidance of Plaintiff in its business transactions.

74.     Defendants supplied false information as described herein, and including, but not limited to: that they would transfer to Plaintiff all tradenames and intellectual property, and that they would not use the client list described herein.

75.     Plaintiff was the entity for whose benefit and guidance the information was supplied.

76.     Plaintiff justifiably relied on the false information provided by Defendants.

77.     Defendants failed to exercise reasonable care or competence in obtaining or communicating the information.

78.     Plaintiff suffered damages in a transaction that Defendants intended to influence.

## COUNT IV
## Breach of Contract

79.     Plaintiff adopts, re-alleges and incorporates all prior paragraphs of this Complaint as though fully set forth herein at length and verbatim.

80.     Plaintiff and Defendant Swetnam entered into the APA, a valid and binding contract with adequate consideration.

81.     Plaintiff performed pursuant to the contract.

82.     Defendant Swetnam breached his duties under the contract, as more particularly described above, including by using the intellectual property and trade names of Floating KC, and by using the Client List of Floating KC.

83.     As a direct and proximate result of such breach Plaintiff has incurred damages and continues to incur damages.

84.     Plaintiff has suffered and will continue to suffer irreparable injury as the result of the conduct of Defendant.

## COUNT V
## Misappropriation of Trade Secrets

85.     Plaintiff adopts, re-alleges and incorporates all prior paragraphs of this Complaint as though fully set forth herein at length and verbatim.

86.     Plaintiff owns and maintains data and information concerning its clients and customers, previously described and defined herein as the "Client List."

87.     The Client List is a trade secret pursuant to the Kansas Uniform Trade Secrets Act (KUTSA), K.S.A. § 60-3320(4).

88.     Defendants acquired, used and/or disclosed trade secret information of Plaintiff without the consent of Plaintiff.

89.     Defendants knew or should have known the trade secret information was acquired by and/or for improper means and purposes.

90.     Defendants knew or should have known that disclosure of the trade secret information would cause damage to Plaintiff.

91.    Defendants' actions of misappropriating trade secret information of Plaintiff, and Defendants' subsequent disclosure and use of such trade secret information, has proximately caused and will continue to cause Plaintiff damages.

92.    Pursuant to K.S.A. § 60-3321, Plaintiff is entitled to injunctive and other protective relief to prevent and/or eliminate the improper commercial advantage which otherwise would be derived from the Defendants' misappropriation of the trade secrets.

93.    Defendants' actions in this regard were intentional, willful, and malicious, such that an award of punitive/exemplary damages and attorney fees is appropriate and justified in accordance with K.S.A. § 60-3322(b) and K.S.A. § 60-3323.

**PRAYER FOR RELIEF**

Plaintiff Numen, LLC demands judgment against Defendants as follows:

(a)    a declaration that Plaintiff owns valid use trademarks in "Floating KC" and "KC's Premier Float Spa."

(b)    declaration that Defendants are infringing and have infringed Plaintiff's trademark rights;

(c)    an award of damages accounting for KC Float Spa, LLC's profits pursuant to 15 U.S.C. § 1117;

(d)    an award of damages accounting for damages sustained by Plaintiff pursuant to 15 U.S.C. § 1117;

(e)    an award of treble damages pursuant to 15 U.S.C. § 1117;

(f)    a permanent injunction prohibiting Defendants from any use or disclosure of the Client List;

(g)     a permanent injunction prohibiting Defendants from soliciting anyone on the Client List;

(h)     an order disgorging any income received from any client listed on the Client List, from KC Float Spa to Floating KC;

(i)     an order prohibiting Defendants from using "KC" in combination with any derivation of the word "Float," including but not limited to floating, floats, etc., in the name of any business entity and/or in connection with the marketing, advertisement, and/or operation of any business or other entity in which Blake Swetnam is employed, or in which he has any interest or plays any role, whether as investor, member, owner, consultant, or otherwise;

(j)     an order prohibiting Defendants from any use of Plaintiff's Marks;

(k)     a permanent injunction prohibiting Defendants from using the websites https://kcfloatspa.com/ and https://ksfloatspa.com as well as any other websites which infringe on the rights of Plaintiff or are likely to cause confusion in the marketplace;

(l)     an order to have "KC Float Spa, LLC" officially change its name with the Kansas Secretary of State's office to a non-infringing name in compliance with the above order;

(m)     an order re-establishing and re-stating Defendants' obligations contained within the Asset Purchase Agreement;

(n)     an award of punitive damages for willful and malicious misappropriation of trade secrets in accordance with K.S.A. § 60-3322(b);

(o)     an award of punitive damages for other and separate willful, malicious, and

intentional misrepresentations by Defendant Swetnam;

(p)     pre-judgment and post-judgment interest at the highest statutory rate;

(q)     an award of attorneys' fees and costs pursuant to the Asset Purchase Agreement as

well as pursuant to K.S.A. § 60-3323 and the Lanham Act;

(r)     such other and further relief as the Court deems just and equitable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff Numen, LLC designates Kansas City, Kansas as the location for trial of this matter.

## JURY DEMAND

Plaintiff Numen, LLC hereby demands a trial by jury on all issues so triable.

Dated September 2, 2022

Respectfully submitted,

**JAMES SOBBA, LLC**

*/s/ Matthew P. Clune*
MATTHEW P. CLUNE (KS #21064)
4435 Main Street, Suite 910
Kansas City, Missouri 64111
Telephone: (816) 623-0043
mclune@jamessobba.com

**ATTORNEYS FOR PLAINTIFF NUMEN, LLC**